IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  1:17-cv-01545-MSK-MJW

APTIVE ENVIRONMENTAL, LLC,

    Plaintiff,

v.

TOWN OF CASTLE ROCK, COLORADO,

    Defendant.

---

## RESPONSE TO APTIVE ENVIRONMENTAL, LLC'S MEMORANDUM OF LAW ON STANDING

---

Defendant, the Town of Castle Rock, Colorado , by and through its undersigned counsel, hereby submits this Response to Aptive Environmental, LLC's Memorandum of Law on Standing ("**Memorandum**"):

## **INTRODUCTION**

In this case, Aptive challenges the Town's 7:00 p.m. to 9:00 a.m. curfew, which applies to for-profit commercial solicitors engaged in door-to-door solicitation. ***Aptive lacks standing to bring this claim.*** Aptive has alleged no injury in fact except that it has been deprived of its own First Amendment rights. Yet Aptive itself does not engage in the First Amendment-protected activity that Aptive alleges is hindered by the curfew. ***Aptive is not a "solicitor" as defined by the Town's municipal code.*** Aptive's sales activities are instead conducted by individuals—third-party, independent contractors ("**Salespeople**")—that Aptive stipulates are not its employees. Although the speech activity of the Salespeople may result in a commercial contract to which Aptive is a party, as more fully addressed in Section I.B.4 below, the speech of these

1607989.1

people is not Aptive's. Aptive neither dictates the speech of the Salespeople nor sets the hours during which they solicit, and thus the curfew does not apparently injure Aptive or deprive it of its commercial speech rights in any manner. And if Aptive *had* brought its claim on behalf of the Salespeople—which it did not do—Aptive cannot meet the applicable judicial test to establish prudential standing on behalf of its Salespeople. Simply put, the constitutional rights of which Aptive seeks to avail itself in this case are, in fact, not being exercised by Aptive.

Aptive has had ample opportunity—including at trial—to establish that its relationship with its Salespeople is anything but a third-party contractor relationship, but has completely failed to do so. Aptive has offered no evidence to the Court to establish that the speech of the Salespeople is actually Aptive's speech or that the Salespeople are incapable of making their own First Amendment claims. Aptive's Memorandum is predicated entirely upon allegations of economic harm. Yet Aptive previously alleged economic harm in this case, but withdrew those allegations in the face of a prospective motion to compel production by the Town. Aptive cannot now reassert economic harm as an independent basis for its standing.

Aptive therefore cannot establish that it has standing insofar as it has failed to allege an injury in fact. The Court should dismiss this action for lack of subject matter jurisdiction.

## RELEVANT FACTS

Aptive challenges the Town's 7:00 p.m. to 9:00 a.m. curfew, in which commercial solicitors are restricted from entering upon private property uninvited. Aptive alleged in its Second Amended Complaint that Aptive itself is a "solicitor" as defined by the Town's municipal code, and that the curfew is an unconstitutional restriction on its own free speech rights. *See* Doc. No.64 , ¶ 64. The Town's code defines "solicitor" as a "person who 'attempts to make personal contact with a resident at his or her residence without prior specific invitation

or appointment from the resident, for the primary purpose of attempting to sell a good or service.'" *See* Doc. No.64 , ¶ 12.

However, Aptive has now stipulated in this case that Aptive contracts with third-party Salespeople who engage in the actual door-to-door sales of contracts for pest control services. *See* Doc. No.106 , ¶ 18. The Salespeople are recruited and trained by "**Team Leaders**," who are also independent contractors and are not employees of Aptive. *See* Doc. No.106 , ¶ 19. The Salespeople each set their own daily schedule and Aptive has no requirement that the Salespeople engage in solicitation during any particular time of the day. *See* Doc. No.91 , ¶ 31. Aptive has not asserted that any of its own employees engage in door-to-door sales, that it is under a credible threat of enforcement by the Town, or that it has sustained any other injury except for an impairment of its own First Amendment rights.[1]  *Cf.* Doc. No.64 , ¶¶ ¶ 1, 2, 18, 20, 21.

## ARGUMENT

### A. Aptive Has The Burden of Proof To Establish Standing In This Case

***The burden of proof to establish standing is on the plaintiff.*** *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).[2] Assessing whether a plaintiff has met the requirements of standing is a fact-specific inquiry particular to each individual case and each individual plaintiff. *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) ("[A] plaintiff must demonstrate standing for each claim he seeks to press.").

---

[1] Aptive's original Complaint alleged that Aptive suffered economic harm and included a claim for damages, *see, e.g.*, Doc. No. 1, ¶¶ 9, 20, 34, but Aptive subsequently amended its Complaint to remove all allegations of economic harm and to withdraw its claim for damages. *See* Doc. No. 46.

[2] While not at issue here, we note that a question of standing is a question of the Court's subject matter jurisdiction to decide on a matter; questions of subject matter jurisdiction may be raised at any time. *See Niemi v. Lasshofer*, 770 F.3d 1331, 1344-45 (10th Cir. 2014).

Aptive argues that *Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221 (10th Cir. 2005) controls this case because there, the Tenth Circuit held that a distributor had standing to challenge a municipal regulation on behalf of salespeople who were independent contractors. *See* Memorandum, p. 3. This argument presents two problems, one legal and one factual. First, it ignores the principle that standing is a fact-specific inquiry that must be established on a case-by-case basis. *See DaimlerChrysler*, 547 U.S. at 352. That the plaintiff business entities in *Pacific Frontier* had standing to assert claims is completely irrelevant to this case. Aptive needs to establish, based on the facts of ***this case***, that it has standing, and it has failed to do so. Second, Aptive's reference to *Pacific Frontier* overlooks the fact that individual solicitors were actually named plaintiffs in that case. *See Pacific Frontier*, 414 F.3d at 1226-27. And that was also true in each one of the other cases Aptive cites in support of its proposition that it should has standing. *See* Memorandum, p. 3.

### B. **Aptive Has Not Met The Injury-In-Fact Requirement To Establish Article III Standing**

"[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III" of the Constitution. *Lujan*, 504 U.S. at 560. In order to establish standing, a plaintiff must demonstrate that (1) he or she has suffered injury in fact; (2) the injury was caused by some action of the defendant; and (3) that the injury is likely to be redressed by a court decision favorable to the plaintiff. *Lujan*, 504 U.S. at 560-61.

Impairment or chilling of a party's First Amendment rights alone may constitute injury in fact for purposes of establishing standing. *See Pacific Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1229 (10th Cir. 2005). Standing may also be established based upon some other injury, including, for example, where a party is credibly threatened with enforcement of a law that implicates First Amendment rights, *see id.*, or where the party has claimed some other injury,

4

such as a loss of revenue, resulting from a speech regulation, *see The Pitt News v. Fisher*, 215 F.3d 354, 360 (3d Cir. 2000).

### 1. Aptive Has Only Alleged One Injury: Loss Of Its First Amendment Rights

The only injury that Aptive has alleged in this case is a loss of its own First Amendment rights; Aptive does not assert that the curfew has caused economic harm to Aptive or that it is credibly threatened with enforcement of the Town's code. *See* Doc. No. 64, ¶ 64. Aptive specifically withdrew its allegation that the curfew caused economic harm, making its argument on pages 5 through 7 of its Memorandum irrelevant and inapplicable.[3] Furthermore, Aptive additionally has not and cannot assert that it is under any credible threat of enforcement under the Town's code. While the code specifically states that "[i]t shall be unlawful for any person, organization, corporation or business entity to instruct, direct, command, order, organize or otherwise arrange for any person to engage in solicitation in violation of" the code, *see* Trial Exhibit 3, CR000159, the fact that Aptive does not even set the hours of its Salespeople's solicitation, i.e. it does not "direct, command, order, organize, or otherwise arrange for" a violation of the code, means that Aptive could *never* be liable for a violation of the Town's code.

A salient difference between the cases that Aptive cites in its Memorandum, *see* Memorandum, p. 3, and this case is the fact that the plaintiff business entities in the cases Aptive cites alleged some other injury besides an impairment of free speech rights. *See Pacific Frontier*, 414 F.3d at 1229 (individual and entity plaintiffs alleged a credible threat of enforcement); *Pac. Frontier v. Kaysville City*, No.1:02–CV–129 TC, 2005 WL 1501433 at *8

---

[3] Aptive's allegation of economic harm in the Memorandum is particularly egregious given the procedural history of this case, in which Aptive amended its complaint to withdraw its allegations of economic harm and claim for damages under the threat of a motion to compel production of Aptive's financial records by the Town. It would be patently unfair for the Court to allow Aptive to withdraw its allegations of economic harm to avoid giving the Town a meaningful opportunity to test such allegations, while simultaneously allowing Aptive to use such untested assertions of economic harm in order to establish standing in this case.

(D. Utah June 23, 2005) (business entity plaintiffs alleged economic harm); *GPIII v. Logan City*, No.1:04–CV–90 TC, 2005 WL 3334933 at *4 (D. Utah Dec. 7, 2005) (business entity alleged that it refrained from selling due to potential criminal sanctions); *Pac. Frontier v. City of St. George*, No.2:04–CV–780–TC, 2005 WL 3334749 at *4 (D. Utah Dec. 7, 2005) (same); *Pac. Frontier v. Taylorsville City*, No.1:02–CV–129 TC, 2005 WL 2000733 at *3 (D. Utah Aug. 18, 2005). In each case, the court found that the business entities had standing because they had alleged injuries independent of a simple loss of First Amendment rights. This case is distinguishable.

### 2. Aptive Is Not A "Solicitor" As Defined Under The Town Code And For That Reason Alone Lacks Standing

Aptive has stipulated that neither it nor its employees engage in any door-to-door solicitation in the Town. *See* Doc. No.106, ¶ 18. Therefore, neither Aptive nor any of its employees are a "solicitor" under the Town's code. *See* Doc. No.64, ¶ 12. The Town's code thus does not deprive Aptive of any free speech rights that either it or its employees attempt to or actually exercise. Inasmuch as Aptive itself is not engaged in door-to-door solicitation activity, Aptive is not a "solicitor" as defined by the Town's municipal code, and that—combined with the fact that the sole injury Aptive has alleged is a loss of free speech rights—means that Aptive lacks standing to bring this claim.

### 3. Aptive Does Not Maintain Hours Requirements For Its Salespeople And Therefore Cannot Establish Causation

Even if Aptive could establish injury in fact, there is another, independent basis upon which the Court should conclude that Aptive lacks standing: it does not require its Salespeople to undertake solicitation at any specific hours. *See* Doc. No. 91, ¶ 31. Aptive is free to engage in its own speech at any time by soliciting on public property, seeking invitations to return to residents' homes after 7:00 p.m., and utilize various other ways of expressing its message. The

6

only restriction imposed by the curfew is on the conduct of the independent contractor—whose hours are not even dictated by Aptive—in trespassing onto private property. This fact is underscored by Aptive's training manual, which instructs the Salespeople that "working additional hours proves to yourself that you are working because you want, and not for Aptive or anyone else." Trial Exhibit 90, AE000115.

Given that Aptive has not, at any point throughout this lawsuit, asserted that it requires its Salespeople to undertake solicitation at a particular time of day, *See* Doc. No. 91, ¶ 31, Aptive cannot assert that the 7:00 p.m. curfew interferes with its speech rights. This flaw goes to the causation requirement of the standing analysis: Aptive is required to show that the 7:00 p.m. curfew *causes* the injury that Aptive asserts it has suffered. *See, e.g.*, *Frank Kasner Enters., Ltd. v. Montgomery Cnty.*, 401 F.3d 230, 235-36 (4th Cir. 2005). Where a third party stands "between the plaintiff and the challenged actions," standing cannot be established. *Id.* at 235. In this case, Aptive freely admits that an individual Salesperson can make the decision to solicit or not solicit at whatever time he or she pleases. *See id.* at 235-36. Thus, Aptive cannot establish that the curfew is the cause of any harm that Aptive has experienced.

### 4. The Speech Being Conveyed By Aptive's Salespeople Is Not Aptive's Speech

Where a party provides its speech to another party to convey such speech, either by contract or other device, the first party does not retain a First Amendment right to that speech. In *Serra v. General Services Administration*, 847 F.2d 1045 (2d Cir. 1988), an internationally-renowned artist voluntarily sold his work—a sculpture—to the federal government for placement in a public plaza. When the government took steps to relocate the sculpture, the artist alleged a First Amendment violation on the grounds that the relocation would undermine the artist's message. *Id.* at 1047-48. The Second Circuit held that, once the artist relinquished the sculpture,

7

he no longer had a First Amendment right to the work, noting that the artist had not "been prevented from making any sculpture or displaying those that he has not sold." *See id.* at 1049. This case is analogous in that Aptive has, by virtue of having contracted with the Salespeople to go door-to-door to sell contracts, relinquished its First Amendment rights to the speech in question. And while the Second Circuit noted that the artist *could* have retained some speech interest in the sculpture had he bargained for some degree of control over the sculpture, *see id.*, Aptive has offered no evidence that it has retained any degree of control over the Salespeople's message. Aptive's "Behavioral Expectations" sheet, *see* Trial Exhibit 90, AE000092, prescribes a minimum standard of conduct of Aptive's Salespeople, controlling their speech only to the extent it is fraudulent. Aptive has offered no other evidence that it has maintained any degree of control over the Salespeople's speech, and it is Aptive's burden to do so.[4]

Similar conclusions to that of *Serra* have been reached in other cases. In *Burke v. City of Charleston*, 139 F.3d 401 (4th Cir. 1998), the Fourth Circuit found that a muralist who painted a mural on a third party's private property and retained no property interest in the mural lacked standing to challenge a municipal regulation requiring its removal, and only the owner of the property had standing to do so. *See id.* at 405-06. That Aptive's relationship with its Salespeople is nearly identical to the relationships between the artists and property owners in these cases is underscored by the fact that Aptive's training manual repeatedly emphasizes the independent nature of the Salespeople. For example, the manual states that it is not scripting the Salespeople, *see* Trial Exhibit 90, AE000113 ("Pick and choose [sales] techniques that will help you the most with your specific sales style") and that the Salespeople are not employees of

---

[4] Other parts of Aptive's manual reiterate the fact that Aptive does not dictate the speech of the Salespeople. For example, it notes that the "manual is a general guide . . . . You do not have to use every line available, nor do you need to recite each rebuttal word for word. Pick and choose techniques that will help you the most with your specific sales style." Trial Exhibit 90, AE000113.

8

Aptive, *see* Trial Exhibit 90, AE000115 ("[W]orking additional hours proves to yourself that you are working because you want to, and not for Aptive or anyone else.").

Even if principles of agency law were to dictate that a Salesperson is an agent of Aptive's because of the fact that the Salesperson sells commercial contracts to which Aptive is a party (although Aptive has put on no evidence establishing an agency relationship), a finding in this case that Aptive has standing under the rationale that the Salespeople's speech is actually that of Aptive would have far-reaching unintended consequences. For example, such a finding would suggest that a homeowner trying to sell a home would have standing to raise a First Amendment challenge to state laws limiting the speech of the homeowner's real estate broker; a holder of a security would have a justiciable First Amendment claim to challenge federal securities law limiting the speech of stock brokers; or that a music artist such as The Beatles would have standing to challenge, under the First Amendment, a prohibition on a cover band playing The Beatles' music that is barred from use of a public bandshell. Case law pertaining to standing under the First Amendment does not require such a far-reaching conclusion. The speech that is allegedly limited by the Town's curfew is not Aptive's speech.

### C. Aptive Has Not Met The Requirements To Establish Prudential Standing To Challenge The Regulation On Behalf Of Its Salespeople

"[E]ven when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement [of Article III], . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). There are "'limited exceptions'" to this rule. *Hollingsworth v. Perry*, 133 S. Ct. 2652, 2663 (2013), *quoting Powers v. Ohio*, 499 U.S. 400, 410 (1991). In order for a plaintiff to make a claim on behalf of third parties, it must additionally show that (1) there is a close relationship between the plaintiff and third party on behalf of whom

9

the plaintiff is making the claim, and (2) that the third party is somehow hindered in his or her ability to make the claim in question. *See Aid for Women v. Foulston*, 441 F.3d 1101, 1112 (10th Cir. 2006). "The concern behind the 'close relationship' element is whether 'the third party can reasonably be expected properly to frame the issues and present them with the necessary adversarial zeal.'" *Id.* at 1113, *quoting Sec'y of State v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956 (1984). The second element requires the litigating party to show "a genuine obstacle that prevents the third party from asserting his or her rights." *S & S Pawn Shop, Inc. v. City of Del Rey*, 947 F.2d 432, 438 n.5 (10th Cir. 1991), *citing Singleton v. Wulff*, 428 U.S. 106, 115-16 (1976). On this element, in order to vindicate the rights of a third party in litigation, a plaintiff must show that "legitimate obstacles . . . exist, which lie beyond the control of the rightholder" such that a third "party's absence from a suit more likely stems from disability than from disinterest." *Miller v. Albright*, 523 U.S. 420, 450 (1998) (O'Connor, J., concurring in the judgment).

While prudential standing requirements are at times relaxed in the context of the First Amendment, *see Munson*, 467 U.S. 956-57 (a party may bring a First Amendment claim challenging a regulation of noncommercial speech where such regulation might chill the speech of third parties), this is not the case when the underlying regulation is purely a regulation of commercial speech, *see Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 477, 481 (1989); *Bates v. State Bar of Ariz.*, 433 U.S. 350, 380-81 (1977).[5] In commercial speech cases, the "obstacle" or "hindrance" prong is not met where the third party is a commercial actor capable of bringing his or her own claim. *See The Pitt News*, 215 F.3d at 362-65. In *The Pitt News*,

---

[5] This the doctrine commonly referred to as "overbreadth." In its Memorandum, Aptive appears to make something of an overbreadth argument, suggesting that Aptive brings its First Amendment challenge because the speech of its Salespeople is chilled. *See* Memorandum, p. 3. As the Town has repeatedly noted throughout this litigation, overbreadth claims are not cognizable in the context of regulations of purely commercial speech, as is the case with respect to the curfew. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 508 (1982).

although the court found that the plaintiff had standing due to the fact that it had alleged economic injury, the Third Circuit found that a newspaper did not have prudential standing to raise First Amendment claims on behalf of alcohol advertisers who were otherwise fully capable of raising their own commercial speech claims. *See id.*

While the Town acknowledges that, in some circumstances, it might be possible for a party to assert standing on behalf of third parties, *See Aid for Women*, 441 F.3d at 1112, Aptive has not asserted its claim on behalf of any of its Salespeople. And even if it had made such an assertion, Aptive could not meet the test for prudential third-party standing. While the Town concedes that Aptive has and is likely to continue to prosecute this litigation with sufficient adversarial zeal, *see Aid for Women*, 441 F.3d at 1112, Aptive has not shown and cannot show the existence of "a genuine obstacle" that prevents its Salespeople from bringing their own claims. *S & S Pawn Shop*, 947 F.2d at 438 n.5. Aptive has not alleged that the Salespeople have some disability that prohibits them from bringing their claims, *see Miller*, 523 U.S. at 450 (O'Connor, J., concurring in the judgment), or that their positions as independent contractors of Aptive do not carry with them any form of social stigma or other hindrance to pursuing their own claims, *cf. Aid for Women*, 441 F.3d at 1114 (finding that the "obstacle" or "hindrance" prong is met where a doctor files suit on behalf of a patient to protect her from social stigma or disclosure of personal medical information). The Salespeople are commercial actors who are fully capable of bringing their own claims, *see The Pitt News*, 215 F.3d at 362-65, and Aptive has therefore not met the requirements to establish standing on behalf of the Salespeople.

Perhaps most importantly, the mere existence of the third-party standing analysis described above highlights the need for the Court in this case to conduct a searching analysis as to whether Aptive has indeed established standing in light of the fact that the speech in question

is undertaken by third-party independent contractors.  A court cannot simply assume that standing exists based upon an ill-defined and unsubstantiated contractual relationship on which a plaintiff has completely failed to put on evidence.  *See, e.g.*, *Warth* 422 U.S. at 499.  Indeed, the third-party standing doctrine exists such that a court can analyze such a relationship and determine whether a plaintiff has adequately established that it has standing.  Aptive has not established the basic requirement of standing in order for this Court to decide this case.  Accordingly, the Court lacks jurisdiction to decide this case.

## CONCLUSION

For each of the reasons set forth above, the Town respectfully requests that the Court find that Aptive lacks standing and dismiss this case for lack of subject matter jurisdiction.

Respectfully submitted this 22nd day of February, 2018.

*/s/ Brian J. Connolly*
Brian J. Connolly
J. Thomas Macdonald
Otten, Johnson, Robinson, Neff &
Ragonetti, P.C.
950 Seventeenth Street, Suite 1600
Denver, Colorado  80202
Telephone:     303 825 8400
Facsimile:      303 825 6525
bconnolly@ottenjohnson.com
mac@ottenjohnson.com

**ATTORNEYS FOR THE DEFENDANT TOWN OF CASTLE ROCK, COLORADO**

1607989.1

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 22, 2018, a true and correct copy of the above and foregoing **RESPONSE TO APTIVE ENVIRONMENTAL, LLC'S MEMORANDUM OF LAW ON STANDING** was electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Steven J. Perfrement, Esq.
Bryan Cave LLP-Denver
1700 Lincoln Street, Suite 4100
Denver, CO 80203-4541
Email: Steven.Perfrement@bryancave.com
*Attorneys for Plaintiff*

Jonathan Kelley, Esq.
Jeremy Fielding, Esq.
Chisara Ezie-Boncoeur, Esq.
Lynn Pinker Cox Hurst
2100 Ross Avenue, Suite 2700
Dallas Texas 75201
Email: jkelley@lynnllp.com
Email: jfielding@lynnllp.com
Email: cezie-boncoeur@lynnllp.com
*Attorneys for Plaintiff*

*/s/ Margo Brown*
Margo Brown

1607989.1